BOIDERS v. DOOLEY et al.

(Court of Civil Appeals of Texas. El Paso. Feb. 15, 1913. Rehearing Denied March 12, 1913.)

1. WITNESSES (§ 139*) — COMPETENCY — PERSONAL TRANSACTION WITH DECEDENT.

Under the express provisions of Rev. St. 1895, art. 2302, plaintiff, in an action against the executor and heirs of a decedent, could not testify in her own behalf relative to a verbal agreement with decedent.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 582–597; Dec. Dig. § 139.*]

2. EVIDENCE (§ 106*)—RELEVANCY TO ISSUES.

In an action to compel the execution of a deed to land which plaintiff claimed to have purchased orally and paid for, where defendant's pleadings and evidence showed that she was only a tenant from month to month, had repudiated her landlord's title, and had been given notice to vacate, evidence that plaintiff was very close and thrifty, offered to contradict defendant's testimony that she was behind in her rent, was properly excluded; defendant being entitled to possession under his pleadings and proof, and there being no issue as to whether she was behind in her rent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 177–187; Dec. Dig. § 106.*]

3. APPEAL AND ERROR (§ 1056*) — REVIEW—HARMLESS ERROR.

In an action to compel the execution of a deed to land which plaintiff claimed to have purchased orally, and of which defendant claimed she was only a tenant, where there was no evidence of payment, the exclusion of evidence as to the value and rental value of the land, if erroneous, was harmless, especially where she did not plead part payment with a tender of the balance.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193; Dec. Dig. § 1056.*]

4. SPECIFIC PERFORMANCE (§ 123*) — EVIDENCE—WEIGHT AND SUFFICIENCY.

In an action to compel the execution of a deed to land which plaintiff claimed to have purchased orally and paid for, evidence as to the purchase and payment held insufficient to make a question for the jury; and hence a verdict for defendant was properly directed.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 397–399; Dec. Dig. § 123.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by Sophy Boiders against H. H. Dooley and others. Judgment for defendants, and plaintiff appeals. Affirmed.

J. W. Campbell, of Houston, for appellant. E. P. & O. K. Hamblen, of Houston, for appellees.

HARPER, C. J. This suit was instituted by appellant against the executor and heirs of H. H. Dooley, alleging that she had made a parol agreement with deceased to purchase lot 9, in block 17, Castainie addition to the city of Houston, for $250, to be paid in monthly installments; that the lot had been paid for, but no deed had been executed before the death of H. H. Dooley, and she prays that the court require executor to execute deed.

Defendants pleaded general denial, and specially pleaded that the contract made by deceased was a lease to plaintiff from month to month, and by way of cross-bill set up ownership in the heirs of H. H. Dooley, deceased, alleged that plaintiff had repudiated her landlord's title, alleged that plaintiff had been given notice to vacate, and prayed judgment for possession of the lot sued for.

Tried by jury, and judgment for defendants for possession of the lot, and for plaintiff for her house, which she had built thereon.

John M. Cobb testified: That three or four years before (the date he was testifying) he went with plaintiff to Dooley, Jr. (the executor), to see about the lot where she lives. That was after the death of his father, "and I stated to him the plaintiff had spoken to me about the lot, and that she claimed to have purchased it from his father, and that she wanted to know how the matter stood; that she thought she had paid for it, and if she had she wanted a deed, and my recollection is he (Dooley, Jr.) said she was nothing but a renter. I asked him to figure up and see what balance was owing, and he said he couldn't or wouldn't do it; that he was representing the estate. Then they had some conversation, and she made him a payment on his demand. He said that she had to make a payment, or he would put her off the place. I don't know how many payments she made while she was working for me; but I made one or two for her during that time, and my recollection is they were $5 per month. I can't be positive about it, because it was about 1901, 1902, or 1903, somewhere along there. I don't think I went to Mr. Dooley's (Jr.) place as an attorney. I went there really to see if what she said was so, and fix her up a deed and pay the balance for her."

The plaintiff testified: "I knew Mr. Dooley, Sr.; had known him all my days. I worked for him until he became the father of two children. I can't read and write. I had a

house built on the lot and paid for it. The first room was built before the Galveston storm, and the second after the storm. I did not claim to own the lot when I built the first room and moved into it."

Milley Wesley: "I had a conversation with Mr. Dooley about buying a lot from him. I asked him if he had another lot for sale, and he said, 'No;' that he had sold Sophy Boiders the last cheap lot he had. I asked him what the price of the lot he sold to her was and he said $250."

Four receipts for $5 each, "on account of rent of lot 9, Blk. 17," were introduced in evidence.

H. H. Dooley, Jr., testified that he, since his father's death, had collected money for rent from plaintiff, and in each instance gave her receipts. "She never claimed to me that she owned the lot until after she had failed to pay for five or six months, and not until after I gave her notice to vacate. My father paid the taxes before his death, and the estate has paid since that time. At the time of my father's death I found an inventory, prepared in his own handwriting, of the properties of the estate, and the lot in question here was included in that inventory as belonging to his estate."

[1] First assignment charges error in excluding the testimony of the plaintiff, Sophy Boiders, upon objection of defendants, that in the spring of 1895 she had a verbal agreement with H. H. Dooley, since deceased, to purchase the lot, substantially as alleged in her pleadings. This assignment is not followed by appropriate proposition or statement, under the rules of the appellate courts; but same is overruled, because, under article 2302, Rev. Statutes, "in actions against executors, * * * in which judgment may be rendered against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, * * * unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent." Tison v. Glass, 46 Tex. Civ. App. 163, 102 S. W. 751.

[2] Second assignment is: "The court erred in sustaining the objections of the defendants and excluding the evidence of the witness J. M. Cobb that he had known plaintiff for many years, and knew her to be very close and thrifty, which action is complained of in first bill of exceptions and motion for new trial. Because the issues made by pleadings and contention of defendants that plaintiff was a mere renter and behind in her rental payments (while objecting to her testifying to the facts) could not reasonably object to any fact and circumstance tending to repel their claim that she was behind in her monthly payments; her close and thrifty

habits were a circumstance to be considered."

The plaintiff's suit being for the lot, and the pleading and proof of defendants being that plaintiff had repudiated her landlord's title, she no longer had any rights under any lease from him, and the pleading and proof being that the lease was from month to month, and that she had notice to vacate, the executor had the right to take possession if the lot belonged to the estate; and the evidence was not material, because the plaintiff's habits as to thrift, etc., or as to whether she was behind in her rents, were not in issue.

[3] Third assignment, submitted as a proposition: "The court erred in sustaining the objections of the defendants and excluding the testimony of the witnesses Will Powars and C. W. Harrel, as appeared by bills of exceptions Nos. 3 and 4, and complained of in motion for new trial, that each of said witnesses had been in real estate business for many years, and was familiar with selling and rental value of lots in vicinity of the lot in controversy, and knew the selling and rental value of the lot in controversy in the spring or summer of 1898; that the fair market selling value of the lot in the spring of 1898 was $250; that the fair rental value of said lot in 1898, and for some years after that, was from $1.50 to $2 per month; and the witness Will Powars, if he had been allowed, would further have testified that he had known plaintiff for many years, and of her living on said lot, and that she was a steady, hard-working, close, and thrifty old negro woman. Because the evidence having shown that in the summer of 1898 plaintiff had built and paid for a frame house 16x30 on said lot, and since continuously occupied it; that she had made a number of $5 payments, and promptly on his death in the spring of 1905 claimed to have paid out the lot, and demanded the deed from his executors, and without any complaint of plaintiff having failed in her payments H. H. Dooley, Sr., about a year before his death, stated he had sold her the lot for $250. The value of the lot and its rental value and the relation of improvements to the value of the lot were important circumstances calculated to throw light on the transaction and for the jury to consider."

If there was error in the ruling of the court complained of, it was harmless, for appellant alleged verbal purchase and offered no evidence of payment; besides, had no pleading showing part payment, making tender of balance, and praying for title. Therefore no notice that the value or rental value would be an issue.

[4] Fourth assignment complains of the peremptory charge of the court: "The court erred in taking the case from the jury and in instructing them to return a verdict for the defendants, as complained of in motion for a new trial. Because the entire evidence admitted and the evidence offered by plaintiff and improperly excluded by the court on objections of the defendants did make issues of fact to be passed on by the jury, and should have been submitted to the jury."

The Court of Civil Appeals, in a former appeal of this case, Dooley v. Boiders, 128 S. W. 690, held that there were enough facts in evidence to require the court to submit the case to the jury. There is nothing to show that the facts are the same as on the former trial, and if the statutory rule, above cited, is enforced there is no evidence in this case that appellant paid the purchase price of the lot in question; for no one offered to testify to payment except herself, and that is excluded by law. This disposes of the fifth assignment.

Judgment affirmed.