## HORTON v. GIBSON et al. (No. 212.)

(Court of Civil Appeals of Texas. Waco. June 4, 1925.)

**I. Insane persons ⬤94(I)—Statute providing for guardian ad litem applicable to justice court.**

Rev. St. art. 1942, providing for appointment of guardian ad litem for minors, lunatics, etc., applies to justice court, as well as county and district courts.

**2. Insane persons ⬤101 — Judgment against ward represented by guardian ad litem enforceable only by execution against his property.**

Where ward appears by regular or permanent guardian appointed by county court, court rendering judgment against ward cannot direct execution against his property, but should direct that judgment be certified to probate court for payment by guardian in administration of ward's property, but duties of guardian ad litem are fully performed when trial is terminated, and, if ward has no regularly appointed guardian, judgment against him can only be enforced by execution against his property.

**3. Judgment ⬤768(2)—Justices of the peace ⬤133—Justice court judgment, recorded before death of incompetent defendant without regular guardian, is lien on his nonexempt property.**

Where no regular guardian was appointed for incompetent defendant, justice court judgment correctly directed that execution issue, and prevented judgment from becoming dormant for 10 years after its date, so that proper indexing and recording of abstract of judgment before defendant's death within such time would create lien on his property not exempt as homestead.

**4. Appeal and error ⬤690(5)—Whether court erred in excluding justice court judgment records not determined, where bill of exception does not show whether abstract of judgment was properly recorded and indexed.**

Where bill of exception does not show whether appellant had abstract of justice court judgment of record, properly recorded and indexed, when it was recorded, etc., appellate court cannot determine whether trial court erred in excluding judgment records in suit to foreclose lien.

**5. Liens ⬤I—Arise only under contract or statute.**

Lien on personalty or realty arises only under contract or statute.

**6. Descent and distribution ⬤138—Creditor has no lien on debtor's property which can be foreclosed in court.**

Creditor has quasi lien or interest in debtor's nonexempt property, that is, right to have it applied to payment of his debt, but not such a lien as can be foreclosed in court in usual way, though debtor dies.

**7. Descent and distribution ⬤144—All heirs of deceased debtor should be made parties by name in suit to foreclose judgment lien.**

All heirs of deceased debtor, whose property vests in them immediately on his death, under Rev. St. art. 3235, should be made parties by name, not as unknown heirs, in suit to foreclose judgment lien.

**8. Descent and distribution ⬤129 — District court may direct sale of deceased debtor's property to satisfy judgment, lien of which did not attach.**

Lien of judgment properly abstracted during judgment debtor's life attaches to his nonexempt property, but, if it does not attach because of failure to properly abstract it, or record or index abstract, such property is still chargeable in hands of debtor's heirs with payment of judgment, and district court, under its broad equitable powers, where there was no administration or need thereof, can adjudicate validity of judgment and order sale of property to pay it in such way as not to permit sacrifice thereof.

**9. Homestead ⬤17—Judgment debtor, his sister, and her children held entitled to homestead exemption while occupying his property as family.**

Judgment debtor, his widowed sister, and latter's minor children, continuing to live on property as family after death of their mother, *held* entitled to homestead, exempt from lien of justice court judgment, while occupying property, if they occupied it when abstract of judgment was filed.

**10. Descent and distribution ⬤150—Court's duty to prorate proceeds of property sold to satisfy judgment between claims of judgment creditor and judgment debtor's heirs making improvements enhancing value of property.**

If heir of deceased debtor expended money for improvements enhancing value of his property in stated amount and property, when sold to satisfy justice court judgment against him, failed to bring enough to satisfy claim for such amount also, it was court's duty to prorate proceeds between claims.

Appeal from District Court, Hamilton County; J. R. McClellan, Judge.

Suit by C. E. Horton, trustee, for benefit of the McKinley-Corrigan Company, against Emma Gibson and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

H. E. Chesley, of Hamilton, for appellant. P. M. Rice and S. R. Allen, both of Hamilton, for appellees.

### Statement.

STANFORD, J. On August 24, 1903, H. T. Newton purchased a house and lot in Hamilton, Tex. On October 17, 1908, he was duly adjudged to be of unsound mind, and was ordered confined in the lunatic asylum at Terrell, Tex. On the 19th day of November, 1909, he was again adjudged to be of unsound mind, but was not ordered to be placed under restraint, the jury finding same was not necessary. On December 16, 1909, he executed a note for $76.70 to McKinley-Corrigan Company, due October 1, 1910.

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

This note was given for groceries and dry goods, etc. H. T. Newton was 35 years of age. He had spells of insanity or epilepsy, and had so had since he was 9 years of age. He and his mother and a widowed sister and her three children all lived together in the place bought by Henry, and he seems to have been their principal support. The note above referred to was not paid, and suit was brought on same by McKinley-Corrigan & Co. against H. T. Newton in the justice court, and on April 3, 1914, judgment was rendered against him for the amount of said note, $120.95.

This judgment recites that H. T. Newton was duly cited, and recites further:

"And it appearing to the court that the defendant, Henry Newton, is a non compos mentis, and has no guardian of his person or estate, Hon. Jesse Shipman is appointed guardian ad litem for said defendant, etc."

On May 5, 1914, execution was issued on above judgment, which was duly returned unsatisfied, and without any levy having been made, on June 6, 1914. Afterwards an abstract of said judgment is alleged to have been duly placed of record and properly indexed in the abstract of judgment records of Hamilton county, Tex. On April 8, 1916, H. T. Newton died intestate, leaving as his sole heirs a brother and Emma Gibson, the widowed sister above referred to, his mother having died in February, 1915. This suit was brought August 28, 1923, by C. E. Horton as trustee, acting under a power of attorney, for the benefit of McKinley-Corrigan Company, who formerly did business in Hamilton county, in the final winding up of their business, against Emma Gibson and the other unknown heirs of H. T. Newton, deceased, alleging there was no administration upon his estate and no necessity for administration; that plaintiff's debt was the only debt against said estate; that said house and lot was of the value of about $250, and was the only property belonging to said estate; that more than 4 years had elapsed since the death of Henry Newton, and that no administration had ever been taken out on his estate, and that none could now be taken out; that the heirs had taken possession of said property without administration, and were claiming it, etc.; that plaintiff had the right to have his claim satisfied out of said property; that he had both a creditor's lien and also a judgment lien against said property, and was entitled to have same foreclosed and said property sold in satisfaction of his claim, etc. The court instructed a verdict for defendants, and from the judgment rendered on said instructed verdict plaintiff prosecutes this appeal.

### Opinion.

[1, 2] In the case of McKinley-Corrigan Company v. H. T. Newton, in the justice court, wherein defendant was sued on a note for $76.70, a guardian ad litem having been appointed to represent the defendant, and having represented him in said cause, the judgment rendered against the said H. T. Newton was a valid judgment. We think the article of our statutes providing for the appointment of a guardian ad litem for litigants who are minors, lunatics, idiots, or non compos mentis applies to the justice court as well as to the county and district courts. Article 1942, Revised Statutes. There is a vast difference between a regularly appointed and qualified guardian, appointed by the county court, the only court which can appoint such guardian, who is in charge of and administering his ward's estate subject to the orders of the probate court, and a guardian ad litem. They are controlled by different provisions of our statutes. In the former, that is, where the ward appears by a regular or permanent guardian, the court rendering judgment has no authority to direct execution against the ward's property, but should direct that such judgment, if against the ward, be certified to the probate court to be paid by the guardian of such ward in the administration of such ward's property. But a guardian ad litem is appointed by any trial court to look after the interests of his ward only in the trial of the particular case in which such appointment is made, and, when such trial is terminated, his duties under such appointment are fully performed. In such case, the ward having no regularly appointed guardian of his estate, in case judgment is rendered against him, unless some one qualifies as guardian, the only way it can be enforced is by execution against the ward's property. Our statutes have provided no other remedy. Laughter v. Seela, 59 Tex. 177; Alston v. Emmerson, 83 Tex. 231, 18 S. W. 566, 29 Am. St. Rep. 639; Simmons v. Arnim, 110 Tex. 309, 220 S. W. 66.

[3, 4] In this case, there being no guardian appointed for H. T. Newton, the justice court judgment correctly directed that execution issue, and the execution, issued May 6, 1914, was sufficient to prevent said judgment from becoming dormant for 10 years after the date of same. And, the above being true, the proper recording and indexing of an abstract of said judgment, if recorded before the death of H. T. Newton, would create a lien on the house and lot in question, provided it was not exempt as homestead. However, as appellant's bill of exception No. 1 fails to show what the judgment records would have disclosed, if same had been admitted, as to appellant having an abstract of judgment of record and as to its being properly recorded and indexed, and, if so, when it was so recorded, etc., we are unable to determine whether or not the trial court erred in excluding said judgment records.

On the other branch of the case as pleaded

by appellant we will say article 3235, as applied to the facts here, provides:

"Whenever a person dies intestate, all of his estate shall vest immediately in his heirs at law, and [except such as may be exempt by law from payment of debts] shall still be liable and subject in their hands to the payment of the debts of the intestate." Article 3235, Revised Statutes.

Our statute providing that the title to the property of the intestate shall immediately vest in his heirs at law, but that the nonexempt property shall be subject to the payment of the debts of the intestate, etc., our Supreme Court holds, in effect, that it is proper and lawful for said heirs to take possession of the property on the death of the intestate, and that such heirs, by so doing, do not become liable for the debts of the intestate nor for the value of the property so received by them, unless they have converted it, but the only remedy the creditor has is to subject such nonexempt property in the hands of the heirs to the payment of his debt, and this may be done through the medium of a statutory trustee, to wit, an administrator, or, in a proper case, where no administration has been taken out and none is necessary, through the medium of the proper court having jurisdiction to establish such debt and to order the sale of such property of the intestate to pay same. Blinn et al. v. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931; Moore v. Moore, 89 Tex. 29, 33 S. W. 217.

[5-8] In the above cases, and other cases, our Supreme Court says much about the creditor's lien on the nonexempt property of his deceased debtor, but we do not think by these expressions is meant a lien, as that term is generally understood. A lien on either personal property or real estate arises only by virtue of a contract or some statutory provision. A creditor has a quasi lien or interest in the nonexempt property of his debtor, that is, he has the right to have it applied to the payment of his debt, and the fact the debtor dies does not create any additional rights in such nonexempt property. Our Supreme Court has never held that the lien here referred to is such a one as can be foreclosed in court, as liens are usually foreclosed. At the time H. T. Newton died, the title to the house and lot immediately vested in his heirs. None of these heirs are named in the plaintiff's pleading except Emma Gibson, and none of them are named in the defendant's pleading. According to the evidence of Emma Gibson, the other heirs are a brother and the descendants of a deceased half-brother. These heirs should all be made parties by naming them, and not as unknown heirs. However, if the property was not exempt, appellant's judgment lien attached, if properly abstracted during his lifetime, and if, by reason of a failure to properly abstract or record or index said abstract of judgment during his life, a lien did not attach, then said property, if not exempt, was still chargeable, in the hands of his heirs, with the payment of said judgment, and the district court, it appearing there was no need of an administration, under its broad equitable powers, would have the right to adjudicate the validity of the justice court judgment and order said house and lot sold to pay same, but to direct the sale of same in such way as not to permit it to be sacrificed. We think this suit was properly brought and in the proper court.

[9] Some interesting questions arise in regard to the homestead exemption. The record discloses that H. T. Newton, his mother, and his widowed sister, Emma, with three small children, lived on the property, and while they did so they constituted a family entitled to homestead exemption. After the mother died, the brother and widowed sister and children continued to be a family, entitled to homestead exemption. If the family here referred to was occupying the property at the time the abstract of judgment was filed, if it was filed, then a judgment lien would not attach so long as said family continued to occupy said property.

[10] The question of improvements in good faith, as pleaded, was inapplicable. However, if appellee Emma Gibson intended to plead as a fact that she expended $315 for improvements on said property, and that said improvements enhanced the value of said property, stating the amount the value was so enhanced, and if she sustained said allegations by proof, then, in case the property is sold, we think it would be the duty of the court, under his equitable powers, in case the property failed to bring enough to satisfy both claims, to prorate the proceeds between the claim of appellant and the enhanced value of the property in favor of appellee Emma Gibson.

For the errors involved in the questions above discussed, we reverse and remand this case for further proceedings in accordance with this opinion.